### Gregory C. ERCOLANI

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 2007.

Decided May 7, 2007.

Timothy P. Wile, Asst. Counsel In–Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

J. Scott O'Keefe, Philadelphia, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY President Judge LEADBETTER.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the order of the Court of Common Pleas of Montgomery County (common pleas), which sustained the statutory appeal of Gregory C. Ercolani and rescinded the suspension of his operating privilege. We reverse and remand with directions to quash the statutory appeal as untimely.

On October 12, 2002, a Whitemarsh Township Police Officer arrested Ercolani and charged him with driving under the influence. On April 17, 2003, DOT suspended Ercolani's license pursuant to Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1) [1] for refusing to submit to chemical testing. Ercolani filed a petition to appeal his suspension *nunc pro tunc*, which common pleas granted following a hearing on the matter. Thereafter, common pleas conducted a *de novo* hearing on the merits of Ercolani's statutory appeal. Ercolani did not challenge that the Bureau established, as required for suspension pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b), that he was arrested for driving under the influence of alcohol, was asked to submit to a chemical test and was specifically warned that a refusal would result in the revocation of his operating privilege. *See Dep't of Transp., Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994). The only point of contention was whether Ercolani refused to undergo the testing, a fact that the Bureau bore the burden of proving. *See Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504 (Pa.Cmwlth.1996). On this point, Whitemarsh Township Police Officer Samuel Ditzler and Ercolani testified as to their version of the arrest and the breath test refusal. Common pleas credited Ercolani's testimony and based thereon sustained his appeal and rescinded the suspension. Thereafter, DOT filed the present appeal, challenging the allowance of Ercolani's appeal *nunc pro tunc*, asserting error in the failure to hold a second merits hearing after retirement of the initial hearing judge and consequent reassignment of the case,[2] and contending that Ercolani's persistent questions regarding the safety of the blood test constituted a refusal.

■ A licensee must file his appeal within thirty days of the date on which the Bureau mails notice of the suspension. *Schofield v. Dep't of Transp., Bureau of Driver Licensing*, 828 A.2d 510, 511 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 575 Pa. 705, 837 A.2d 1179 (2003). Ercolani filed an appeal on July 16, 2003. The Bureau contends that it mailed Ercolani a suspension notice dated March 13, 2003, but Ercolani testified that he did not receive it. However, Ercolani attached to his petition a copy of his certified driving

---

1. Section 1547(b)(1) provides:
   Suspension for refusal.—
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. There is no merit in this assertion of error. Judge Maurino J. Rossanese, Jr. received the case as an assignment after the retirement of Judge Lawrence A. Brown, who conducted the de novo merits hearing. On reassignment, Judge Rossanese did not substitute his decision for that of Judge Brown but merely wrote the opinion called for under Pa. R.A.P. 1925, explaining the reasons for Judge Brown's decision. In so doing, Judge Rossanese accepted all of Judge Brown's determinations as to the credibility and weight of the testimony. Under these circumstances, where the hearing judge rendered his decision, stating very briefly on the record the basis therefor, and the judge who received the case by reassignment thereafter did not make any independent findings, there is no need to conduct a new hearing. *Cf. Wasiolek v. Philadelphia*, 146 Pa.Cmwlth. 582, 606 A.2d 642 (1992) (where the initial hearing judge failed to render a decision prior to the reassignment of the case, a new hearing must be conducted); *Ciaffoni v. Ford*, 211 Pa.Super. 472, 237 A.2d 250 (1968) (on reassignment, the substituted judge cannot render a decision based on the record made before the initial hearing judge).

history, which documents that the Bureau mailed the notice of suspension on March 13, 2003.[3] Under the "mailbox rule," this documentation triggers the presumption that Ercolani received the notice. *Dep't of Transp., Bureau of Driver Licensing v. Grasse,* 146 Pa.Cmwlth. 17, 606 A.2d 544, 546 (1991). Ercolani's testimony to the contrary, standing alone, is not sufficient to rebut this presumption. *Id.; Dep't of Transp. v. Brayman Constr. Corp.,* 99 Pa.Cmwlth. 373, 513 A.2d 562, 566 (1986). Hence, Ercolani's appeal, filed well outside the thirty days following his presumed receipt of the suspension notice, was out of time and could not properly be considered absent grounds justifying an allowance of the appeal *nunc pro tunc.*

■ A court may permit a licensee to appeal *nunc pro tunc* only where the licensee's failure to file a timely appeal resulted from extraordinary circumstances involving fraud or a breakdown in the administrative or judicial process. *Kulick v. Dep't of Transp., Bureau of Driver Licensing,* 666 A.2d 1148 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 616, 674 A.2d 1077 (1996); *Dep't of Transp., Bureau of Driver Licensing v. Lefever,* 111 Pa.Cmwlth. 105, 533 A.2d 501 (1987). In his petition of July 16, 2003,

seeking an appeal *nunc pro tunc,* Ercolani asserted nothing more than that he did not receive the suspension notice and became aware of the suspension only when he received a letter from the Bureau, dated May 20, 2003, explaining the requirements for eventual restoration of his driving privileges. Other than Ercolani's single, and legally inadequate, assertion that he did not receive the notice, nothing in either his petition or his hearing testimony points to a breakdown in the administrative process that justifies *nunc pro tunc* relief.[4]

■ Moreover, a petitioner in a *nunc pro tunc* appeal must proceed with reasonable diligence once he knows of the necessity to take action. *Schofield.* In this matter, Ercolani explained that he waited a month or two after he received the restoration requirements letter, dated May 20, 2003, before he contacted an attorney. This delay shows a lack of reasonable diligence, which is not excused by the fact that the May 20 letter regarding license restoration did not advise Ercolani of any time limit within which to appeal the suspension. The time for appeal of a license suspension is established by statute and, therefore, Ercolani must be charged with knowledge of that information. Indeed, in his testimony, Ercolani stated that, after

**3.** DOT did not formally offer Ercolani's suspension notice or certified driving record into evidence at the *nunc pro tunc* hearing. However, pursuant to Pa. R.A.P.1921, the certified record on appeal, upon which we base our review, includes "the original papers and exhibits filed in the lower court." In conformance with this rule, the record certified by common pleas contains Ercolani's petition for allowance of appeal *nunc pro tunc,* to which he attached a copy of his certified driving record. Ercolani cannot avoid the presumption that arises as a result of information he put before the court as an attachment to his pleading by arguing that the Bureau did not introduce it into the record.

**4.** Ercolani initially filed his license suspension appeal and petition to allow it *nunc pro tunc*

in Philadelphia, where common pleas granted the petition without a hearing and noted that the Bureau reserved the right to move to quash the petition at the time the appeal was heard on the merits. Subsequently, the Philadelphia court transferred the case to Montgomery County, where common pleas conducted a de novo hearing on the petition to appeal *nunc pro tunc.* The Bureau did not move to quash. Ercolani now asserts that the Bureau's failure to request quashal waived its objection to *nunc pro tunc* allowance. There is no merit in this contention. The Bureau has consistently opposed the petition and no legal authority directs or requires that such opposition be preserved in a motion to quash.

the incident triggering his license suspension, he was waiting to receive a suspension notice so he could appeal. The May 20 letter, by Ercolani's own admission, alerted him to the suspension. Once aware of the suspension, an obligation ensued to act promptly and diligently. Ercolani's delay in pursuing an appeal is also not excused by the fact that the Court of Common Pleas of Philadelphia County initially refused to accept his appeal papers without the suspension letter, advising him to write to DOT and obtain a copy. All of this transpired after Ercolani eventually sought to appeal his suspension and does not explain his delay in taking action in the first instance.

Accordingly, we reverse and remand for quashal of the statutory appeal as untimely.

## ORDER

AND NOW, this 7th day of May, 2007, the order of the Court of Common Pleas of Montgomery County in the above captioned matter is hereby REVERSED and REMANDED. Hereby, we direct common pleas to quash the statutory appeal as untimely.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Court of Common Pleas of Montgomery County (trial court) erred in allowing Gregory C. Ercolani's *nunc pro tunc* appeal. As a result, the majority does not address whether the trial court erred in concluding that the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) failed to meet its burden of

proving that Ercolani refused to submit to a blood test. For the reasons that follow, I cannot agree that the trial court erred in allowing Ercolani's *nunc pro tunc* appeal or in concluding that DOT failed to meet its burden of proving that Ercolani refused to submit to a blood test.

### I. *Nunc Pro Tunc* Appeal

On July 16, 2003, Ercolani filed a *nunc pro tunc* appeal from a driver's license suspension imposed by DOT on March 13, 2003. At a hearing on the *nunc pro tunc* appeal, Ercolani testified as follows:

Q. Back in October 200[2], you were arrested for DUI; is that correct?

A. Yes.

Q. As a result of that, you were told that you had refused to take the blood test?

A. Yes.

Q. After that time, you had contacted my office is that right?

A. That's right.

Q. I told you that you were going to have a license suspension for your failure to take the blood test; isn't that correct?

A. Yes.

Q. Did you ever receive a notice of suspension for the failure to take that blood test?

A. No.

Q. Were you waiting for such a notice to come to your residence?

A. Yes, I was, so I could appeal.

. . . .

Q. **I told you that we needed the letter from [DOT] in order to appeal the suspension;** [1] **isn't that correct?**

---

1. Ercolani's attorney was correct. Under section 1550(a) of the Vehicle Code, an appellant *is* **required** to serve DOT with a copy of the petition for appeal, "together with a **copy of the notice** of the action from which the appeal has been taken." 75 Pa.C.S. § 1550(a) (em-

A. Yes.

Q. Did you ever receive that letter?

A. No, I did not.

(R.R. at 65a–66a) (emphasis added). On cross-examination, Ercolani testified that he became aware of the suspension when he received a May 20, 2003, license restoration letter from DOT. Ercolani then testified:

Q. Let me ask the question. Mr. Ercolani, when you received the letter, the restoration letter, basically, what did you do?

A. I notified [my attorney].

Q. And how long after you received the letter, did you notify your lawyer?

A. **I don't recall how long afterwards.**

Q. Was it two months later? A month later? Two weeks later?

A. It could have been a month or two. **I don't recall.**

(R.R. at 71a) (emphasis added). The Commonwealth presented no witnesses and offered no exhibits. After considering the matter, the trial court believed that Ercolani never received the suspension notice and allowed the *nunc pro tunc* appeal.

A licensee may file a *nunc pro tunc* appeal where the failure to file a timely appeal resulted from extraordinary circumstances involving a breakdown in the administrative process. *Kulick v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 1148 (Pa.Cmwlth. 1995), *appeal denied*, 544 Pa. 616, 674 A.2d 1077 (1996). Here, Ercolani established that he never received a suspension notice. Absent evidence that DOT mailed the suspension notice, it was reasonable for the trial court to infer that DOT never mailed the notice. DOT's failure to mail a suspension notice constitutes a breakdown in the administrative process, entitling Ercolani to a *nunc pro tunc* appeal.

## A. Mailbox Rule

DOT argues that the trial court erred in allowing the *nunc pro tunc* appeal without applying the mailbox rule.[2] Under the mailbox rule, proof of mailing raises a presumption that the mailed item was received, and the presumption is not nullified solely by testimony denying receipt of the item mailed. *Department of Transportation, Bureau of Driver Licensing v. Grasse*, 146 Pa.Cmwlth. 17, 606 A.2d 544 (1991). However, the mailbox rule applies only when there is **evidence** that the item was in fact mailed. *Department of Transportation v. Brayman Construction Corporation–Bracken Construction Company*, 99 Pa.Cmwlth. 373, 513 A.2d 562 (1986). Here, because DOT presented no evidence that the suspension notice was in fact mailed to Ercolani, the mailbox rule does not apply.

phasis added). Without the suspension notice, it was **impossible** for Ercolani to comply with this requirement. Moreover, in his *nunc pro tunc* appeal, Ercolani alleged that he attempted to file an appeal prior to July 16, 2003, but the prothonotary refused to accept the appeal without a suspension notice. (R.R. at 15a, Petition, ¶ 6.)

2. I note that, in *Department of Transportation, Bureau of Traffic Safety v. Warenczuk*, 534 Pa. 623, 633 A.2d 1167 (1993), an equally divided supreme court addressed whether due process requires that DOT prove **actual receipt** of a suspension notice in a license suspension proceeding, i.e., whether the mailbox rule should even apply in such cases. Three justices would have held that due process **does** require that DOT prove actual receipt of the suspension notice or that DOT made reasonable attempts to insure that the suspension notice was actually received. *Id.* Although licensees continue to claim that they did not receive suspension notices, our supreme court has not revisited the due process issue since *Warenczuk*.

The majority ignores the lack of evidence, relying on an attachment to Ercolani's *nunc pro tunc* appeal. (Majority op. at 4.) The majority notes that, under Pa. R.A.P.1921, the original papers filed in the trial court are part of the "record" on appeal. (Majority op. at 4 n. 3.) However, the original papers are not **evidence,** and the mailbox rule requires **evidence** that an item was mailed. *Brayman Construction.* As stated by our supreme court, pleadings "are not evidence for any purpose" unless offered in evidence or placed on the record by the presiding judge or by counsel. *Buehler v. United States Fashion Plate Company,* 269 Pa. 428, 433, 112 A. 632, 634 (1921).

To the extent that the majority is treating the attachment to Ercolani's *nunc pro tunc* appeal to the trial court as a judicial admission that the notice was mailed, "[j]udicial admissions are **not evidence** at all." Leonard Packel and Anne Bowen Poulin, Pennsylvania Evidence 2d ed. § 127 (1999) (emphasis added). Rather, judicial admissions are "formal concessions in the pleadings ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id.* Here, it is obvious that the attachment to Ercolani's *nunc pro tunc* appeal is **not** a formal concession that DOT mailed a suspension notice to him; nowhere does the attachment formally state that Ercolani concedes the mailing of the suspension notice. The attachment is Ercolani's driving record, which Ercolani attached to the *nunc pro tunc* appeal in lieu of the suspension notice, which he never received. Thus, the attached driving record represents what Ercolani is contesting, **not** what Ercolani is admitting.

## B. Reasonable Diligence

DOT also argues that the trial court erred in allowing the *nunc pro tunc* appeal because Ercolani did not proceed with reasonable diligence once he learned about the suspension from the May 20, 2003, license restoration letter.[3] However, the May 20, 2003, letter did not inform Ercolani that he needed to file an appeal within a certain period of time. Moreover, Ercolani reasonably believed that he could not file his appeal without a suspension notice from DOT. Finally, the trial court found that DOT was responsible for much of the delay, taking judicial notice of the difficulty involved in obtaining documents from DOT.[4]

---

3. The majority states that Ercolani "waited **a month or two** after he received the restoration requirements letter, dated May 20, 2003, before he contacted an attorney." (Majority op. at 5) (emphasis added). However, the trial court made no such finding of fact, and it is not the role of this appellate court to make findings of fact. *Zwibel v. Department of Transportation, Bureau of Driver Licensing,* 832 A.2d 599 (Pa.Cmwlth.2003). Moreover, when asked how long it was before he contacted his attorney, Ercolani actually testified, "I don't recall." (R.R. at 71a.) Finally, Ercolani certainly did not wait two months to act; in response to someone's request, DOT printed Ercolani's driving record on June 24, 2003, only thirty-five days after DOT mailed the May 20, 2003, letter.

4. Ercolani's attorney offered to testify as a witness regarding the difficulty he had in obtaining a suspension notice from DOT. The attorney stated:

    [Counsel]: Your Honor, can I make a proffer? My testimony would be, we never until this morning saw the suspension letter. I called PennDOT. I asked them. I need it. I went over to city hall—
    The Court: [Counsel,] I don't have a problem with that. I can take judicial notice, because I have dealt with PennDOT on the phone myself, and I understand sometimes it's quite frustrating to talk to a person—if you can get a real, live person on the phone—at PennDOT. I understand the consternation you must have gone through.

The majority states that Ercolani's delay after receiving the May 20, 2003, restoration letter is not excused by the lack of notice of his appeal rights. The majority further states, "The time for appeal of a license suspension is established by statute and, therefore, Ercolani must be charged with knowledge of that information." (Majority op. at 5.) However, the time for appeal established by statute is thirty days after **entry of the order** from which the appeal is taken, *see* section 5571(b) of the Judicial Code, 42 Pa.C.S. § 5571(b), and the date of entry of an order is the date of **service,** which is the date of mailing **if service is by mail,** *see* section 5572 of the Judicial Code, 42 Pa.C.S. § 5572.[5] Because there is no evidence, or finding of fact, in this case that DOT served Ercolani with the notice of suspension by mail, these statutory provisions are not operable here.

Moreover, the majority's reasoning sets a dangerous precedent. At the present time, DOT provides notice of appeal rights in suspension notices. It appears that the majority is inviting DOT to remove that notice as legally unnecessary. However, I submit that DOT is providing the notice because procedural due process, i.e., notice and an opportunity to be heard, is required in license suspension cases. *Department of Transportation, Bureau of Traffic Safety v. Quinlan,* 47 Pa.Cmwlth. 214, 408 A.2d 173 (1979) (stating that a licensee's operating privileges may not be terminated without the procedural due process required by the Fourteenth Amendment); *Grindlinger v. Department of Transportation, Bureau of Traffic Safety,* 7 Pa.Cmwlth. 347, 300 A.2d 95 (1973) (stating that procedural due process in license suspension cases requires adequate notice and an opportunity to be heard). If DOT were to remove the notice of appeal rights from suspension notices, many licensees would be deprived of their appeal rights and, thus, an opportunity to be heard.[6]

## II. Refusal to Submit

In order to sustain its license suspension in this case, DOT was required to establish that Ercolani refused to submit to the blood test. *Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504 (Pa.Cmwlth.1996). In *McDonald v. Department of Transportation, Bureau of Driver Licensing,* 708 A.2d 154, 157 (Pa.Cmwlth.1998), this court held that "ten to fifteen minutes of questioning" by a licensee who is confused about his or her rights does **not** constitute a refusal.

Here, Ercolani credibly testified as follows:

A. I went to Suburban Mercy Hospital. When I arrived there I was taken into a room to have my blood taken. I rolled

---

(R.R. at 72a–73a.) In its appeal, DOT does **not** argue that the trial court erred in taking judicial notice.

5. Thus, when an agency renders an adjudication outside the presence of the parties, the date of entry of the order is deemed to be the date of mailing rather than the date of entry on the docket. *See Claims of Linefsky,* 159 Pa.Cmwlth. 234, 632 A.2d 1061 (1993) (discussing when the date of the entry of an order is the date of entry on the docket as opposed to the date of mailing), *appeal denied,* 539 Pa. 639, 650 A.2d 54 (1994).

6. DOT cites *Department of Transportation, Bureau of Driver Licensing v. Matlack,* 144 Pa. Cmwlth. 12, 600 A.2d 998 (1991), for the proposition that DOT is not obligated to inform licensees of their appeal rights. The majority does not rely on *Matlack,* and, after careful review, I also find no reason to do so. In *Matlack,* the licensee presented "absolutely no evidence" to support his *nunc pro tunc* appeal, *id.* at 1000, which means that the licensee could not have prevailed on the merits. Thus, the question regarding whether DOT was required to provide notice of appeal rights was of no consequence.

my sleeve up. I asked the police officer if—I've never done this before. So ... he said, if you have a problem with the blood test you ... would sue the manufacturer of the blood test. And I asked who the manufacturer of the blood test was. And the technician looked on the box and he walked out of the room when he could not find the name of the manufacturer. And I stayed there with my sleeve rolled up on my arm. And the ... police officer said to me, that is it, you're not driving for a year, sign here.... I immediately told the police officer that ... I do not refuse to take the test, that I wanted to take a test. And I did not refuse. The police officer ... handcuffed me and took me out to the patrol car.

Q. At any time, did you tell the technician or police officer that you would not take the blood test?

A. No, I did not.

Q. And had you ever had blood taken before?

A. No, I didn't.

(R.R. at 46a–47a.) On cross-examination, Ercolani testified:

Q. Approximately, how long did they spend with you in the hospital?

A. About 10 or 15 minutes.

(R.R. at 48a.)

In sum, Ercolani never had a blood test and, after rolling up his sleeve, asked about his rights in the event of a problem. The police officer informed him that he could sue the manufacturer of the blood test. Ercolani asked the technician the identity of the manufacturer, but, when the technician could not find it on the box, the technician simply left the room. The police officer deemed Ercolani's conduct dur-

ing that ten-to-fifteen-minute period to be a refusal. However, under *McDonald,* that period of questioning by Ercolani does **not** constitute a refusal.

Moreover, the fact that the trial court reached the same result indicates that the trial court did not believe that Ercolani's questions were a ploy to debate, maneuver or negotiate the taking of the blood test. *See Henderson v. Department of Transportation,* 123 Pa.Cmwlth. 1, 553 A.2d 105 (1989) (stating that the licensee's conduct constitutes a refusal where it evidences an attempt to debate, maneuver or negotiate the question of taking the blood test). Rather, the trial court clearly believed that Ercolani asked his questions in good faith.

Finally, in *Todd v. Department of Transportation, Bureau of Driver Licensing,* 555 Pa. 193, 723 A.2d 655 (1999), our supreme court stated that a motorist must be allowed a reasonable and sufficient opportunity to complete chemical testing. In my view, the police officer in this case did not allow Ercolani a reasonable and sufficient opportunity to complete the blood test. Ercolani had no control over the technician's sudden exit from the room, yet the police officer did not wait for the technician to return before deeming Ercolani's conduct a refusal.

Accordingly, unlike the majority, I would affirm.

Judge SMITH–RIBNER joins in this dissent.