IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Marnik, Jr.,                    :
                                  Appellant :
                                            :
              v.                            :
                                            :
Commonwealth of Pennsylvania,               :
Department of Transportation,               :   No. 814 C.D. 2017
Bureau of Driver Licensing                  :   Submitted: December 1, 2017


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: April 19, 2018


              Christopher Marnik, Jr., (Marnik) appeals from the Allegheny County
Common Pleas Court's (trial court) May 11, 2017 order dismissing his appeal from
the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver
Licensing's (DOT) 18-month operating privilege suspension imposed pursuant to
Section 1547 of the Vehicle Code (commonly referred to as the Implied Consent
Law) (Law).[1]  The sole issue before this Court is whether, on remand from this Court,
a trial court judge who did not preside over the trial, had the ability to make
credibility determinations and factual findings concerning the same.[2]  After review,
we vacate and remand.

_____

[1] 75 Pa.C.S. § 1547.  The Law provides for a 12-month driving privilege suspension for
refusal to submit to chemical testing; however, it increases to 18 months where, *inter alia*, an
individual has been previously sentenced for driving under the influence of alcohol or a controlled
substance pursuant to Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802.

[2] Marnik raises three issues in his Statement of the Questions Involved that are all subsumed
within this issue: (1) whether fairness dictates that principles of due process and fundamental
fairness require that the original trial judge be consulted to determine what credibility and factual

By letter dated May 10, 2013, DOT notified Marnik that, due to his refusal to submit to a chemical test following an arrest for driving under the influence of alcohol (DUI) on April 29, 2013, his vehicle operating privileges would be suspended for 18 months beginning June 14, 2013. On June 6, 2013, Marnik appealed to the trial court.

On May 29, 2014, trial court Judge Robert C. Gallo (Judge Gallo) held a *de novo* hearing during which Robinson Township Police Department patrolman Michael Gastgeb (Officer Gastgeb) testified regarding the incidents on April 29, 2013, that led to Marnik's arrest and Officer Gastgeb's request that Marnik submit to chemical testing. Officer Gastgeb was the only witness to testify at the hearing.

On February 24, 2015, the trial court sustained Marnik's appeal, reasoning:

> The objective evidence was that Officer Gastgeb observed a vehicle belonging to [Marnik's] grandfather parked on the roadway with a bent tire and scratches on its passenger side. Officer Gastgeb could not recall if the keys were in the ignition or if the car was running, although he recalled that he had testified at the preliminary hearing that he would have made a note of it on his Police Report if the keys were in the ignition. While Officer Gastgeb was at the scene, he observed [Marnik] approaching the car. Officer Gastgeb observed that [Marnik] exhibited several signs of intoxication and [Marnik] told him that he had drinks earlier. Officer Gastgeb did not ask him when he had been drinking or where he had been. When [Marnik] met with the Officer, [he] had no car keys with him.
>
> Nowhere is there any evidence that [Marnik] had any intoxicating beverage when he drove his car. There is simply no objective evidence from which to conclude that

---

determinations he made; (2) whether the newly-assigned trial court judge should have provided Marnik notice and an opportunity to be heard before the newly-assigned trial court judge rendered his decision; and, (3) whether the newly-assigned trial court judge improperly speculated as to the original trial court judge's credibility and factual determinations.

2

[Marnik] was in actual physical control of his vehicle while intoxicated.

Reproduced Record (R.R.) at 99a-100a.

DOT appealed to this Court. In *Marnik v. Department of Transportation, Bureau of Driver Licensing*, 145 A.3d 208 (Pa. Cmwlth. 2016) *(Marnik I)*, this Court explained that to justify a license suspension for refusal to submit to chemical testing, DOT must demonstrate, among other things, that the licensee was arrested for DUI by a police officer who had reasonable grounds to believe that the licensee was operating or in actual physical control of the movement of the vehicle while under the influence of alcohol. The Court further stated:

> 'In assessing whether [DOT] has met this burden, we consider the totality of the circumstances and determine, as a matter of law, **whether a person in the position of the arresting officer could have reasonably reached this conclusion.'** *Helt v. Dep't of Transp., Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004) (emphasis added). '**It is not necessary for an officer to actually witness a licensee operating a vehicle in order to have reasonable grounds to place him under arrest for [DUI].'** *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014) (emphasis added). However, 'at the very least, there must be some objective evidence that the motorist exercised control over the movement of the vehicle at the time he was intoxicated.' *Banner* [*v. Dep't of Transp., Bureau of Driver Licensing*], 737 A.2d [1203,] 1207 [(Pa. 1999)].

*Marnik I*, 145 A.3d at 212.

According to Officer Gastgeb's testimony: Marnik appeared intoxicated within 20 minutes of the accident and admitted that he had been drinking earlier; Marnik acknowledged to Officer Gastgeb that the vehicle belonged to his grandfather, and he had driven it earlier; Officer Gastgeb had passed the same location within minutes before the accident and the vehicle was not there; Marnik did not know whether he had been in an accident; and, no one was around the vehicle

3

when Officer Gastgeb arrived on the scene at approximately 1:20 a.m.[3]  Relying in part on this Court's statement in *Helt*, that "[a]n officer's belief that the licensee was

---

[3] In *Marnik I*, this Court summarized DOT's evidence as follows:

> [Officer Gastgeb] testified that, on April 29, 2013 at approximately 1:20 a.m., he observed a disabled vehicle on the roadway with no occupant.  According to Officer Gastgeb, no one was around the vehicle at that time.  Officer Gastgeb stated that the vehicle had a bent tire and scratches on the passenger side consistent with a guard rail impact.  Officer Gastgeb explained that the accident had occurred just prior to his arrival, since the vehicle had not been present when he passed that location just fifteen minutes earlier.  Officer Gastgeb further indicated that while he was at the scene, Marnik approached, dressed in gym shorts and a t-shirt.  Marnik stumbled, had glassy eyes, slurred speech and smelled of alcohol.  Officer Gastgeb described his interaction with Marnik as follows:

> > Q.    And how long after you came upon this disabled vehicle did [Marnik] show up?

> > A.    It was within a few minutes.

> > Q.    And what kind of balance did [Marnik] manifest at that time?

> > A.    [Marnik] was stumbling.  He had [a] general[ly] hard time keeping his balance walking towards me.

> > Q.    And what happened after [Marnik] approached you?

> > A.    I asked him if that was his vehicle.

> > Q.    What was his answer?

> > A.    He said, yes; it's my grandfather's vehicle.

> > Q.    What did you next say to him?

> > A.    I asked if he had been driving the vehicle and he said yes.  And I asked if he was in an accident and he said he did not know.

4

driving will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances supports the officer's belief[,]" the *Marnik I* Court concluded that **if** Officer Gastgeb's testimony was credible, DOT met its burden of proving that Officer Gastgeb reasonably believed that Marnik was operating the vehicle while intoxicated. *Helt,* 856 A.2d at 266. However, the *Marnik I* Court could not discern from Judge Gallo's opinion whether he had found Officer Gastgeb's testimony credible. Accordingly, the Court vacated Judge Gallo's order and remanded the matter to the trial court to address the credibility of Officer Gastgeb's testimony and render a new decision consistent with *Marnik I.*

Unbeknownst to this Court, when *Marnik I* was decided, Judge Gallo had retired from the bench. Trial court Senior Judge Lester G. Nauhaus (Judge Nauhaus) was assigned the case and attempted to comply with this Court's order in *Marnik I* by reviewing the certified record, making his own credibility determinations regarding Officer Gastgeb's testimony, and rendering a new decision. On May 11, 2017, Judge Nauhaus issued his opinion and order explaining:

> This Court has reviewed the record and the transcript of the hearing that occurred on May 29, 2014, and has found no indication that Judge Gallo found any of Officer Gastgeb's testimony to be incredible. Moreover, this [trial c]ourt finds the testimony of Officer Gastgeb to be credible, including his testimony that [Marnik] admitted driving the vehicle and that he had been patrolling the area 15 minutes earlier and the vehicle was not there.

---

> Q.    He didn't know. Okay. What happened next after you asked him if he had been in an accident and he responded that he didn't know?
>
> A.    Yes. I asked if he had been drinking tonight and he said, yes; I was earlier. At that time, [Marnik] refused to communicate with me and the other officers.

*Marnik I*, 145 A.3d. at 210 (quoting the Reproduced Record at 17a-18a).

Trial Ct. Op. (filed May 11, 2017) at 2. Thus, the trial court dismissed Marnik's appeal. Marnik appealed to this Court.[4]

Marnik contends that Judge Nauhaus, who was not the original presiding trial court judge and, thus, did not hear Officer Gastgeb's live testimony, improperly made credibility determinations and factual findings with respect to Officer Gastgeb's testimony.

Pennsylvania courts have addressed the legal consequences of a presiding judge's unavailability due to retirement, suspension, disability, resignation or death. In *Ercolani v. Department of Transportation, Bureau of Driver Licensing*, 922 A.2d 1034 (Pa. Cmwlth. 2007), DOT appealed from a lower court decision that sustained Ercolani's statutory appeal and rescinded Ercolani's suspension. DOT argued, in part, that the lower court should have held a second merits hearing because the original hearing judge had retired and the case had been reassigned to a judge who rendered the opinion. This Court rejected DOT's argument, explaining:

> There is no merit in this assertion of error. [The newly-assigned judge] received the case as an assignment after the retirement of [the original judge], who conducted the *de novo* merits hearing. On reassignment, [the newly-assigned judge] did not substitute his decision for that of [the original judge] but merely wrote the opinion called for under [Pennsylvania Rule of Appellate Procedure] 1925[(a)], explaining the reasons for Judge Brown's decision. In so doing, [the newly-assigned judge] **accepted all of [the original judge's] determinations as to the credibility and weight of the testimony.** Under these circumstances, where the [the original judge] rendered his decision, stating very briefly on the record the basis therefor, and [the newly-assigned judge] did not make any independent findings, there is no need to conduct a new hearing. *Cf. Wasiolek v.*

---

[4] "This Court's scope of review in a license suspension case is limited to determining whether the trial court's findings of facts are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Stancavage v. Dep't of Transp.*, *Bureau of Driver Licensing*, 986 A.2d 895, 898 n.6 (Pa. Cmwlth. 2009).

6

> [*City of*] *Phila*[.], . . . 606 A.2d 642 ([Pa. Cmwlth.] 1992) (where the initial hearing judge failed to render a decision prior to the reassignment of the case, a new hearing must be conducted); *Ciaffoni v. Ford,* . . . 237 A.2d 250 ([Pa. Super.] 1968) (on reassignment, the substituted judge cannot render a decision based on the record made before the initial hearing judge).

*Ercolani*, 922 A.2d at 1036 n.2 (bold emphasis added; text italics added).

In *Wasiolek*, former city employee Wasiolek filed a complaint in equity alleging Philadelphia Home Rule Charter violations relating to his employment. A non-jury trial was held before Judge Julian F. King (Judge King) whom the Pennsylvania Supreme Court subsequently suspended from his duties. Thereafter, Wasiolek received Judge King's decision. Because Judge King had been suspended, the matter was reassigned to Judge Lawrence Prattis (Judge Prattis), who held a conference with counsel and requested proposed findings of fact and conclusions of law based on the record created before Judge King. Thereafter, the matter was reassigned to Judge Armand Della Porta (Judge Della Porta). After pre-trial hearings, Judge Della Porta scheduled the case for trial to elicit additional testimony. However, before the trial could be held, Judge Prattis issued a verdict based on the record created by Judge King. Wasiolek filed post-trial motions, complaining that Judge Prattis should not have rendered a decision after the action had been transferred to Judge Della Porta. Judge Della Porta denied Wasiolek's motion. Wasiolek appealed to this Court arguing, *inter alia*, that a rehearing should have been held before Judge Prattis, and that it was improper for Judge Prattis to render findings based on credibility evaluations of witnesses who did not testify before him. The *Wasiolek* Court agreed and reasoned:

> The Pennsylvania Superior Court considered a similar situation in the case of *Hyman v. Borock,* . . . 235 A.2d 621 ([Pa. Super.] 1967), and determined that in the absence of the parties' consent, a court may not substitute another judge for the trial judge where the testimony has been heard

7

without a jury and the trial judge has not rendered a decision on the factual issues. *Hyman* was followed in *Ciaffoni* . . . , where the Superior Court considered a situation where the trial judge had rendered a verdict, but subsequently recused himself. The Superior Court determined that the substituted judge was not entitled to rely upon the record made before the first judge in the absence of evidence of consent from both parties. Although the present situation differs slightly from both situations above, **it is apparent that Wasiolek is entitled to a rehearing; Judge King was unable to provide a valid verdict and Judge Prattis' verdict based upon a review of the record made before Judge King is not a satisfactory substitute for the verdict of a judge who has heard testimony.**

*Wasiolek*, 606 A.2d at 644 (emphasis added). Thus, this Court vacated the trial court's order denying post-trial motions and remanded for a rehearing.

Similarly, in *Commonwealth ex rel. Davis v. Davis*, 408 A.2d 849 (Pa. Super. 1979), the Superior Court remanded a custody matter for a new hearing and full opinion where a hearing judge granted custody to the father and granted visitation rights to the mother. Because the original hearing judge completed his term in office, the opinion in support of the original hearing judge's orders was written by another judge. The Superior Court explained:

It should first be noted that the hearing judge did not file an opinion in support of the custody orders. Rather a common pleas judge, not the hearing judge, wrote the lower court's opinion upholding the hearing judge's decision. While we acknowledge the opinion was ably done, it should not have been undertaken at all. The record discloses that there were serious conflicts in the testimony of the appellant and the appellee. The opinion writing judge inadvertently misstated the testimony of a principal witness called on behalf of the appellant. Not uniquely peculiar to this case, the accepted facts and the inferences that can be drawn from them depend on the credibility of the testifying witnesses. This vital function can only be determined by the judge before whom these witnesses appear.

8

> For these reasons, we are satisfied that the orders entered below must be vacated and the matter remanded for a full hearing and a comprehensive opinion by the hearing judge, reflecting a thorough analysis of the record as a whole, including an assessment of the credibility of the witnesses.

*Davis*, 408 A.2d at 850; *see also Sherman v. Yoder*, 430 A.2d 347, 348 (Pa. Cmwlth. 1981) ("Certainly, if [the subsequently-assigned judge] had been requested to pass upon factual issues where the testimony had been presented to [the recused judge], his doing so would have been error.").

In *Labyoda v. Stine*, 441 A.2d 379 (Pa. Super. 1982), the appellants filed an equity claim in the trial court seeking injunctive relief for alleged damage to their property resulting from water and rocks entering their property from the appellees' lot. The original chancellor (chancellor) granted a rule to show cause why a preliminary injunction should not issue. The chancellor viewed the property, and while there, took testimony and admitted evidence. Before the chancellor could render a decision, he joined the Pennsylvania Supreme Court as a Justice. The appellants argued to the trial court that a new chancellor should conduct a new property viewing and hearing. The new chancellor heard oral argument, but declined to view the property or take new evidence. Thereafter, he made findings of fact and conclusions of law, and in his decision denied the appellants' relief, and granted the appellees the relief they sought in a counterclaim. On appeal, the Superior Court relied on the *Hyman* and *Ciaffoni* cases, characterizing those holdings as "disallow[ing] a [trial court's] decision based on the record developed before a judge no longer sitting on the case where such a procedure was not consented to by the parties . . . [and where] there were factual questions still in dispute." *Labyoda*, 441 A.2d at 380-81. Applying *Hyman* and *Ciaffoni* to the facts before it, the Superior Court reversed the trial court's decision and remanded the matter.

9

After concluding in *Marnik I* that the trial court's opinion lacked a credibility determination for Officer Gastgeb, who was the only witness to testify, and whose testimony was critical to whether DOT had met its burden, this Court remanded for that express purpose. Our Supreme Court has explained:

> Ordinarily, where the record is in a confused state and the trial court has not made findings of fact, we would remand the proceedings for appropriate factual determinations by the trial judge. In the present action, however, this is impossible since the trial judge has retired from the bench and is no longer available to make the necessary findings. Therefore, in order to protect against a possible miscarriage of justice in the present situation, a new trial is necessary to clarify the many ambiguities appearing on the record and to permit the rendering of necessary factual and legal determinations by a trial court.

*Ballinger v. Howell Mfg. Co.*, 180 A.2d 555, 557 (Pa. 1962). Consistent with *Ballinger*, a new trial is necessary in the instant matter to permit a new presiding judge to hear testimony and render necessary credibility determinations, factual findings and conclusions of law.

> We recognize that to remand now means not merely a remand for a fuller opinion, but rather to start the proceedings all over again. This is necessitated by the fact that the presiding judge is no longer on the bench. We find it extremely unfortunate that the proceedings must be renewed in the lower court, but we see no acceptable alternative. We cannot review the record of this case without . . . a determination of witness credibility.

*Delbaugh v. Delbaugh*, 487 A.2d 417, 419 (Pa. Super. 1985).

10

For all of the above reasons, the trial court's order is vacated, and the matter is remanded for a new hearing on the merits.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Marnik, Jr.,       :
                 Appellant    :
                                    :

           v.                   :

Commonwealth of Pennsylvania,    :
Department of Transportation,      :   No. 814 C.D. 2017
Bureau of Driver Licensing       :

## O R D E R

AND NOW, this 19th day of April, 2018, the Allegheny County Common Pleas Court's May 11, 2017 order is vacated and this matter is remanded for a new hearing on the merits consistent with this opinion.

Jurisdiction relinquished.

_____
ANNE E. COVEY, Judge