# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Guarionex Sanchez Payano,      :
            Appellant      :
                              :
      v.                  :  No. 1044 C.D. 2021
                              :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :  Submitted: July 29, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                            FILED: November 3, 2022


Guarionex Sanchez Payano (Licensee) appeals from the August 26, 2021 Order of the Lehigh County Court of Common Pleas (Trial Court) denying his statutory appeal and reinstating the lifetime disqualification of his commercial driver's license (CDL). The Trial Court concluded that Licensee's appeal was untimely filed and he failed to prove that his late appeal was caused by a breakdown in the administrative process. We affirm the Trial Court's Order.

## **Background**

By letter dated March 5, 2020 (First Disqualification Notice), the Department of Transportation, Bureau of Driver Licensing (DOT), notified Licensee that his commercial driving privilege was disqualified for one year, effective April 9, 2020, pursuant to Section 1611(a)(6) of the Uniform Commercial Driver's License Act

(UCDLA), 75 Pa. C.S. § 1611(a)(6),[1] due to his conviction on February 26, 2020 for driving a commercial vehicle while his operating privilege was suspended on January 14, 2020.

On October 6, 2020, Licensee was convicted a second time of driving a commercial vehicle while his operating privilege was suspended on August 25, 2020. By letter dated October 14, 2020 (Second Disqualification Notice), DOT notified Licensee that his commercial driving privilege was disqualified for life, effective April 9, 2021, pursuant to Section 1611(c) of the UCDLA, 75 Pa. C.S. § 1611(c),[2] due to that conviction.

By letter dated October 21, 2020 (Restoration Requirements Letter), DOT notified Licensee of the requirements necessary to restore his commercial driving privilege. In the Restoration Requirements Letter, DOT reiterated the bases for the disqualification of Licensee's driving privilege as follows:

---

[1] Section 1611(a)(6) of the UCDLA states:

> Upon receipt of a report of conviction, *[DOT] shall*, in addition to any other penalties imposed under this title, *disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation* of[] . . . [S]ection 1606(c) [of the UCDLA] (relating to requirement for commercial driver's license)."

75 Pa. C.S. § 1611(a)(6) (emphasis added). Section 1606(c)(1)(ii), in turn, prohibits a person from "driv[ing] a commercial motor vehicle or a school vehicle during any period in which[] . . . *his operating privilege is suspended*, revoked, canceled or recalled *until the person's operating privilege has been restored*." 75 Pa. C.S. § 1606(c)(1)(ii) (emphasis added).

[2] Section 1611(c) of the UCDLA states in relevant part: *"[DOT] shall disqualify for life any person convicted of two or more violations* of any of the offenses specified in subsection (a)[] . . . or any combination of those offenses and/or refusals, arising from two or more separate and distinct incidents." 75 Pa. C.S. § 1611(c) (emphasis added).

You have a 1 YEAR[] disqualification that began (or will begin on) 04/09/20 and will end on 04/09/21. It resulted from a violation on 01/14/20 of Section 1606[(c)(1)(ii) of the UCDLA].

You have . . . 1 LIFETIME disqualification that began (or will begin on) 04/09/21 and will end on [(intentionally left blank)]. It resulted from a violation on 08/25/20 of Section 1606[(c)(1)(ii) of the UCDLA].

Notes of Testimony (N.T.), 7/26/21, Ex. C-3.

On April 9, 2021, Licensee filed a Notice of Appeal from the Second Disqualification Notice in the Trial Court. On June 8, 2021, DOT filed a Motion to Dismiss the Appeal as untimely. On July 21, 2021, Licensee filed a *Nunc Pro Tunc* Appeal from the Second Disqualification Notice.

The Trial Court held an evidentiary hearing on July 26, 2021. Licensee testified on his own behalf with the assistance of a Spanish-speaking interpreter. *See* N.T., 7/26/21, at 16.[3]

Licensee testified regarding his first conviction for driving with a suspended license as follows:

A. The officer stopped me because he needed to inspect the truck, and then he told me that my license was not in the system regarding the medical card and I still had six more months to go on that medical card.

Q. Did you have a medical card in your possession when the officer stopped you?

A. Yes. I showed him immediately.

Q. When he told you [that] you were not in the system, what did you do about that?

---

[3] Licensee testified that he understands "very little" English but can speak English "up to a point." N.T., 7/26/21, at 33-34.

A. He told me to go to Jim Thorpe and I did go and I show[ed] them my medical card and they told me to go to []DOT.

. . . .

Q. And when you went to []DOT what happened with respect to your CDL . . .?

A. I pa[id] $41 for the restoration and I was told everything was fine.

Q. So did they put a hole in the former license you had before?

A. Yes, and they kept it.

Q. So now you had your CDL . . . And do you recall what happened with respect to the citation that you had gotten[] . . . on January 14th?

A. Yes.

Q. And did you go and plead guilty to that citation at some point?

A. I did go. I think [I] went to them and I requested a payment plan for the $1[,]400, and they gave me a plan of $150 monthly that I had to pay. And I was not aware of the consequences that that would bring me.

*Id.* at 16-18; *see id.* at 27-28.

Licensee did not recall receiving the First Disqualification Notice advising him of the one-year disqualification of his CDL. *Id.* at 19. Licensee testified that when he paid the fine for the January 14, 2020 citation, he believed he was authorized to continue driving with his CDL. *Id.* Licensee also did not recall receiving the Second Disqualification Notice in October 2020 advising him that his CDL was disqualified for life. *Id.*

Licensee testified that on June 28, 2020, he moved from 749 North Lumber Street in Allentown, Pennsylvania, to 335 North Franklin Street in Allentown, Pennsylvania. *Id.* He testified that two or three days later, he notified DOT of his

4

change of address "on[]line." *Id.* at 20, 24. He "also went to the post office to pick up the [change of address] form," "filled that form out," and "also sent it by mail." *Id.* at 20. Licensee testified that he picked up the change of address form "by the two [sic] of the following month." *Id.* Thereafter, he received mail at his new address from the electric company, which showed that "the[ electric company] move[d] the address from the 749 [North] Lumber [Street] to 335 [North] Franklin [Street]." *Id.* Licensee testified that after he moved in June 2020, he stopped working for six months. *Id.*

Licensee testified that some time in October 2020, he went to his previous address, "knock[ed] on the door," "ask[ed] if there was something that ha[d] been sent to [him]," and the person living there gave him the Restoration Requirements Letter. *Id.* at 21. Licensee then testified:

> Q. So after October 21st of 2020, did you consult with an attorney or anyone else about the status of your CDL license?
>
> A. I called Harrisburg to ask them why was this happening, and they told me that they didn't know why was that [sic] happening.
>
> Q. And what did you do then after talking to Harrisburg?
>
> A. After that I was told to go to Lehigh Street to talk to Ms. Martinez,[4] that she is a representative there. *After I talked to her and she explained to me that I had had two violations and that I needed to hire an attorney to resolve this issue, I got very depressed and down and I didn't do much about it until somebody recommended [Mr. Clark].*

*Id.* at 21-22 (emphasis added).

DOT's counsel then cross-examined Licensee about his change of address, during which the following exchange occurred:

---

[4] The record does not indicate where Lehigh Street is located, where Ms. Martinez works, or Ms. Martinez's first name. Licensee testified only that Ms. Martinez is either a "city representative" or a "state representative" and "that she is on Lehigh Street." N.T., 7/26/21, at 30-31.

Q. . . .Where do you currently live?

A. 335 North Franklin Street.

Q. And your attorney filed a motion last week that said your address is 749 Lumber Street.

A. Well, that is because that is the address that is on my I.D. I went with my I.D. to []DOT and they told me that I have to resolve these issues for them, and then after that they would put my new address on my license, that they cannot change it.

*Id.* at 23. Licensee testified that he completed the online form to change his address on DOT's website on July 1, 2020. *Id.* at 24. DOT's counsel then asked Licensee if he ever received "an acknowledgement that [DOT] received [his] application to change [his] address," to which he replied, "No." *Id.* at 24.

Licensee testified that he first received the Restoration Requirements Letter in October 2020. *Id.* at 26-27, 29. DOT's counsel explained to Licensee that the letter is "a restoration requirements letter," which "is sent out by []DOT when someone requests it. You can go on the website and request a letter from []DOT asking about how to restore your license and they will send it to you. So my question to you is: Did you request this letter?" *Id.* at 27. He responded, "No." *Id.*

Licensee testified that he went to see Ms. Martinez at the "[e]nd of October" 2020. *Id.* at 31. He testified that he first met with his counsel, Mr. Clark, "maybe three weeks before" he filed his appeal in April 2021. *Id.* at 32. The Trial Court then asked Licensee:

Q. What did [Ms. Martinez] tell you to do, if anything?

A. *She checked everything and she told me for this case I need an attorney.* For this case I need to find an attorney so I can find second chance.

6

Q. When did you speak to her approximately?

A. *The week after I received the letter.*

Q. *The lifetime suspension?*

A. *Yes, the lifetime.*

Q. What month and what year was that?

A. *That was in October, 2020, at the end of October.*

*Id.* at 36 (emphasis added). The Trial Court then asked Licensee, "[W]hen did you first see Attorney Clark?" to which he replied, "In March [2021]." *Id.* at 37.

Following the hearing, on August 26, 2021, the Trial Court entered an Order denying Licensee's appeal, concluding: "There is no evidence of fraud, deception, duress, or a breakdown in the administrative process to justify a late filing. As such, the [Trial] Court does not have jurisdiction to hear the appeal." Trial Ct. Order, 8/26/21, at 1 n.1 (citing *Ercolani v. Dep't of Transp., Bureau of Driver Licensing*, 922 A.2d 1034 (Pa. Cmwlth. 2007) (*en banc*)).[5]

---

[5] The Trial Court did not issue findings of fact or write an opinion pursuant to Pa.R.A.P. 1925(a) in support of its Order. "Ordinarily, the remedy for non-compliance with Pa.[]R.A.P. 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court." *Lemon v. Dep't of Transp., Bureau of Driver Licensing*, 763 A.2d 534, 537 (Pa. Cmwlth. 2000). However, we decline to remand to the Trial Court for an opinion in this case, because we conclude that the record is sufficient for appellate review. *See id.*; *see also McQuaide v. Dep't of Transp., Bureau of Driver Licensing*, 647 A.2d 299, 300-02 & n.1 (Pa. Cmwlth. 1994) (reviewing the merits of DOT's appeal from a trial court order that included only a brief statement of its reason for sustaining the licensee's statutory appeal, even though "the trial court failed to indicate any factual findings or credibility determinations" in its order); *Brown v. Zaken* (Pa. Cmwlth., No. 1347 C.D. 2016, filed Sept. 21, 2017), slip op. at 7 ("The requirements of [Pa.R.A.P.] 1925(a) are satisfied 'as long as the trial court provides at least a short statement indicating the reasons for [its] ruling.") (citation omitted).

Licensee now appeals from that decision.[6]

## Analysis

On appeal, Licensee asserts that the Trial Court erred in concluding that he was not entitled to appeal *nunc pro tunc* because the evidence at the hearing established that his late appeal was caused by a breakdown in the administrative process. Specifically, Licensee argues that he "did not receive notice of the lifetime disqualification and he had taken steps to make []DOT aware that he had moved and had a new mailing address." Licensee Br. at 10.

A licensee must file an appeal within 30 days of the mailing date of the notice of suspension or disqualification of his operating privilege. *See Ercolani*, 922 A.2d at 1036. An appeal filed beyond the 30-day appeal period is untimely and deprives the trial court of subject matter jurisdiction over the appeal. *Dep't of Transp., Bureau of Driver Licensing v. Maddesi*, 588 A.2d 580, 582 (Pa. Cmwlth. 1991). In this case, the record shows that the mailing date of the Second Disqualification Notice was October 14, 2020, *see* N.T., 7/26/21, Ex. C-1, so Licensee was required to file his appeal with the Trial Court within 30 days of that date, or by November 13, 2020. Licensee did not file his appeal until almost five months later, on April 9, 2021.

A trial court may permit a licensee to appeal *nunc pro tunc* only where the licensee's failure to file a timely appeal was due to extraordinary circumstances involving fraud or a breakdown in the administrative process. *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594, 598 (Pa. Cmwlth. 2003). The

---

[6] In a license suspension appeal, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether the trial court's factual findings are supported by substantial evidence. *Zwibel v. Dep't of Transp., Bureau of Driver Licensing*, 832 A.2d 599, 603 (Pa. Cmwlth. 2003).

8

licensee bears the burden of proving extraordinary circumstances justifying a late appeal. *Id.*

Licensee asserts that he did not learn of the lifetime disqualification of his CDL until he received the Restoration Requirements Letter in October 2020 and that the Letter did not advise him of his appeal rights, which he claims was an administrative breakdown. We disagree.

An *en banc* panel of this Court rejected this same argument in *Ercolani*. In that case, DOT suspended the licensee's operating privilege for his refusal to submit to chemical testing on April 17, 2003. *Ercolani*, 922 A.2d at 1036. The record showed that DOT mailed the notice of suspension on March 13, 2003, but the licensee testified that he never received it. *Id.* DOT then mailed the licensee a restoration requirements letter dated May 20, 2003. The licensee testified that he appealed the suspension "a month or two" after he received the restoration requirements letter. *Id.* at 1037. On appeal, this Court concluded that the licensee's "appeal, filed well outside the [30] days following his presumed receipt of the suspension notice, was out of time and could not properly be considered absent grounds justifying an allowance of the appeal *nunc pro tunc*." *Id.* This Court further held:

> [A] petitioner in a nunc pro tunc appeal must proceed with reasonable diligence once he knows of the necessity to take action. In this matter, [the licensee] explained that he waited a month or two after he received the restoration requirements letter, dated May 20, 2003, before he contacted an attorney. *This delay shows a lack of reasonable diligence, which is not excused by the fact that the May 20 letter regarding license restoration did not advise [him] of any time limit within which to appeal the suspension. . . . The May 20 letter, by [the licensee's] own admission, alerted him to the suspension. Once aware of the suspension, an obligation ensued to act promptly and diligently.*

*Id.* at 1037-38 (internal citation omitted) (emphasis added). Therefore, this Court directed the trial court to quash the licensee's appeal as untimely.

Like the licensee in *Ercolani*, Licensee contends that he did not receive notice of the lifetime disqualification of his CDL, that he first learned of the disqualification when he received the Restoration Requirements Letter, and that the Letter failed to advise him of his appeal rights. However, *Ercolani* instructs that regardless of whether the Restoration Requirements Letter advised Licensee of his appeal rights, the Letter clearly advised him that his CDL had been disqualified for life. Consequently, upon receipt of that Letter, Licensee was required to act promptly and diligently in pursuing an appeal. *See id.* at 1037 ("The time for appeal of a license suspension is established by statute and, therefore, [the licensee] must be charged with knowledge of that information.").

Next, Licensee asserts that he notified DOT of his change of address shortly after he moved from North Lumber Street to North Franklin Street in June 2020, so DOT's failure to mail the Second Disqualification Notice to the North Franklin Street address was an administrative breakdown justifying his late appeal.

Under Section 1540(b) of the Vehicle Code, DOT need only notify a licensee of a suspension or disqualification of his operating privilege at his address of record. *See* 75 Pa. C.S. § 1540(b) (providing that DOT "*shall forthwith notify the person in writing at the address of record* to surrender his driver's license to [DOT] for the term of suspension, revocation or disqualification") (emphasis added). Our Court has explained:

> Under the mailbox rule, *proof of mailing raises a rebuttable presumption that the mailed item was received and it is well-settled that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed. Further, [DOT's] certification of a driving record showing that notice was given is competent to establish*

10

*that notice was sent.* [DOT] is not required to show that the licensee actually received the notice.

*Dep't of Transp., Bureau of Driver Licensing v. Grasse*, 606 A.2d 544, 545-46 (Pa. Cmwlth. 1991) (internal citations omitted).

In this case, DOT entered into evidence Licensee's certified driving record, which shows that the Second Disqualification Notice was mailed to Licensee's address of record, 749 North Lumber Street, on October 14, 2020. N.T., 7/26/21, Ex. C-1; *see id.*, Ex. C-3. To rebut the presumption of receipt, Licensee testified that he did not receive the Second Disqualification Notice and that he notified DOT and the United States Postal Service of his change of address "two or three days" after he moved to North Franklin Street. N.T., 7/26/21, at 19-20.[7] Other than this testimony, however, Licensee offered no documentary or other evidence showing that DOT was notified of his change of address prior to its mailing of the Second Disqualification Notice.[8] In fact, Licensee testified that he did not receive any acknowledgement from DOT after he completed the online change of address form. *Id.* at 24. Moreover, Licensee testified that when he met with Mr. Clark in March 2021, he gave Mr. Clark his North Lumber Street address, and that was identified as Licensee's address of residence on

---

[7] Section 1515(a) of the Vehicle Code provides:

> Whenever any person after applying for or receiving a driver's license moves from the address named in the application or in the driver's license issued or when the name of a licensee is changed, such person shall, within 15 days thereafter, notify [DOT] of the old and new addresses or of such former and new names and of the number of any license then held by the person. . . .

75 Pa. C.S. § 1515(a).

[8] Notably, Licensee also testified that he did not recall receiving the First Disqualification Notice, *see* N.T., 7/26/21, at 19, which was mailed to his North Lumber Street address in March 2020, three months before he moved to North Franklin Street.

both of his appeal documents filed with the Trial Court. *Id.* at 38; *see id.*, Ex. C-2 (in his *Nunc Pro Tunc* Appeal, filed on July 21, 2021, Licensee averred that he was "residing at and having a mailing address of 749 Lumber Street, Allentown, PA 18102"); Not. of Appeal ¶ 1 (averring the same). Given the apparent discrepancies between Licensee's testimony and the record evidence on this issue, we conclude that Licensee failed to prove that DOT mailed the Second Disqualification Notice to an incorrect address.

However, even if Licensee had successfully rebutted the presumption of receipt of the Second Disqualification Notice, we conclude that Licensee failed to act with reasonable diligence in filing his appeal after learning of the disqualification. It is well settled that "a petitioner in a *nunc pro tunc* appeal *must proceed with reasonable diligence* once he knows of the necessity to take action." *Ercolani*, 922 A.2d at 1037 (emphasis added); *see Kaminski v. Montgomery Cnty. Bd. of Assessment Appeals*, 657 A.2d 1028, 1031 (Pa. Cmwlth. 1995). Licensee testified that he first learned of the lifetime disqualification of his CDL when he received the Restoration Requirements Letter in October 2020. N.T., 7/26/21, at 26-27. Licensee testified that one week after receiving the Restoration Requirements Letter, he spoke with a representative, Ms. Martinez, at the "[e]nd of October" 2020, who told him that he "had two violations and that [he] needed to hire an attorney to resolve this issue." *Id.* at 21-22, 31, 36. Yet Licensee admitted that he did nothing further until he met with Mr. Clark in March 2021. *Id.* at 31-32, 37. Licensee offered no explanation as to why he waited five months to take action, other than stating that he was "very depressed" and "down" about losing his CDL. *Id.* at 22, 31. Under these circumstances, we conclude that Licensee failed to establish that he acted with reasonable diligence in filing his appeal. *Accord Ercolani*, 922 A.2d at 1037 ("[The licensee] . . . waited a month or two after he

12

received the restoration requirements letter[] . . . before he contacted an attorney. *This delay shows a lack of reasonable diligence*[] . . . .") (emphasis added).[9]

### Conclusion

Based on the evidence of record, we conclude that Licensee: (1) failed to prove that his untimely appeal was the result of a breakdown in the administrative process; and (2) failed to act with reasonable diligence after learning of the lifetime disqualification of his CDL in October 2020. Therefore, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

[9] In his appellate brief, Licensee points to other "extraordinary circumstances" that he claims led to the filing of his late appeal, including "the closings of the courts and the state at various points in 2020 and 2021" due to the COVID-19 pandemic and the United States Postal Service's "huge backlogs in delivering the mail" in the fall of 2020. Licensee Br. at 13-14. However, Licensee failed to present these arguments before the Trial Court, so they are waived. *See Wert v. Dep't of Transp., Bureau of Driver Licensing*, 821 A.2d 182, 186 (Pa. Cmwlth. 2003) (holding that issues not raised before the trial court cannot be raised for the first time on appeal); Pa.R.A.P. 302(a). Licensee also asserts that he experienced "great confusion" about three notices he received from DOT in February 2020 relating to the suspension of his operating privilege. Licensee Br. at 12. Even if Licensee could establish that he was confused about the status of his operating privilege when he was cited in August 2020 for driving with a suspended license, he may not collaterally attack his underlying criminal conviction in a civil proceeding on the disqualification of his CDL. *See Piasecki v. Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1067, 1071 (Pa. Cmwlth. 2010) (stating that "[t]he underlying conviction is not reviewable by the trial court or this Court" because "'[a] licensee may not collaterally attack an underlying criminal conviction in a civil license suspension proceeding'") (citation omitted); *Shewack v. Dep't of Transp., Bureau of Driver Licensing*, 993 A.2d 916, 919 (Pa. Cmwlth. 2010) (applying the same principle to an appeal from the disqualification of a licensee's CDL).

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Guarionex Sanchez Payano,           :
                     Appellant      :
                                    :
        v.                          :  No. 1044 C.D. 2021
                                    :
Commonwealth of Pennsylvania,       :
Department of Transportation,       :
Bureau of Driver Licensing          :


# **O R D E R**

AND NOW, this 3rd day of November, 2022, the Order of the Court of Common Pleas of Lehigh County, dated August 26, 2021, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge